UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION



FILED BY_____D.C.

OCT 20 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

| | |
|---|---|
| YILUN CHEN, <br><br> *Plaintiff*, <br><br> v. <br><br> **FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, in its official capacity,** <br><br> *Defendant.* | CASE NO. <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

### I.  BACKGROUND

1.  This is an action seeking damages for Defendant's violations of Plaintiff's civil rights under Title VI of The Civil Rights Act Of 1964 and Title IX of The Education Act Amendments Of 1972. Plaintiff also asserts state common law claims for False Imprisonment and Breach of Contract.

### II.  PARTIES

2.  Plaintiff Yilun Chen is a resident of the State of Florida and a former student of Florida International University.

3.  Defendant Florida International University Board of Trustees ("FIU") is now and at all material times has been the governing body of Florida International

University. Florida International University (FIU) is a state and federally funded University located in Miami, Florida.

### III.   JURISDICTION & VENUE

4. This action arises under the laws of the United States. Therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

5. This action arises under the following federal statutes: Title IX of The Education Act Amendments Of 1972. Pub.L. No. 92-318, 86 Stat. 373 (1972), 20 U.S.C. §§ 1681 et seq., which prohibits discrimination based on sex in educational institutions receiving federal funding. Title VI of The Civil Rights Act Of 1964. Pub.L. No. 88-352, 78 Stat. 252 (1964), 20 U.S.C. §§ 2000d et seq., which prohibits discrimination based on national origin in any program or activity receiving federal funding.

6. In accordance with 28 U.S.C. § 1367, this Court also has supplemental over Plaintiff's state law claim for breach of contract.

7. Venue in this action is proper in the Southern District of Florida Miami Division because the events relevant to this action occurred primarily within the geographical confines of the Southern District of Florida.

### IV.   Factual Allegations

8. Plaintiff was born in Taiwan but has attained United States citizenship and resides in Florida.

9. Plaintiff enrolled in FIU to obtain a Fine Arts degree.

10. During the Summer 2018 semester, Plaintiff was a student in a photography course taught by Peggy Nolan ("Nolan").

11. Plaintiff was well known to be soft spoken and somewhat shy.

12. Despite this, Nolan took it upon herself to ask Plaintiff repeatedly to speak Chinese in front of the class.

13. This request was not connected to any class material or learning goal.

14. When Plaintiff refused her request, Nolan called Plaintiff racist and subjected him to verbal abuse.

15. Nolan went on to make several other racially charged comments, including the suggestion that non-Asian people who eat at Panda Express are racist.

16. In addition to the racial harassment, Nolan also made inappropriate remarks regarding Plaintiff's romantic life.

17. Nolan continually asked Plaintiff if he had a girlfriend, and asked Alexandra Del-Canto ("Del-Canto") to kiss Plaintiff.

18. Plaintiff never initiated these conversations, and Nolan's remarks made him feel extremely uncomfortable.

19. On June 18, 2018, Plaintiff attempted to report Nolan's behavior to William Maguire ("Maguire") via email.

20. Nolan had previously been reported by FIU students for making racial remarks within a similar time frame.

21. The next day on June 19, 2018, Nolan sent Plaintiff an email purporting to apologize to Plaintiff for calling Plaintiff racist.

22. Nolan was never punished or reprimanded for her racially charged remarks.

23. Plaintiff had maintained a friendship with Del-Canto throughout his time at FIU.

24. Plaintiff had set clear relationship boundaries with Del-Canto, stating that he was not interested in a romantic relationship and wanted to remain friends.

25. Del-Canto aggressively transgressed these boundaries.

26. Del-Canto constantly accused plaintiff of being controlling and complained about Plaintiff's reserved nature.

27. On June 16th, 2019, after seeing a movie together, Del-Canto refused to drive Plaintiff back to his car.

28. Del-Canto locked the doors of her car and forced Plaintiff to remain in the car while Del-Canto drove continually around Hollywood Florida, an area Plaintiff was unfamiliar with.

29. Del-Canto proceeded to interrogate Plaintiff about whether he had romantic feelings for her.

30. Plaintiff reiterated that he was not romantically interested in Del-Canto, which further angered Del-Canto, causing her tone and demeanor to become even more hostile and threatening.

31. Del-Canto's behavior terrified Plaintiff causing his body to shake uncontrollably.

32. This ordeal went on for over 30 minutes.

33. On July 21st, 2019, Plaintiff met with William Maguire in order to address Del-Canto's abusive behavior.

34. When Plaintiff informed Maguire about the June 19th, 2019, incident, Maguire began laughing, and did not take the incident seriously.

35. Maguire told Plaintiff that his concerns regarding Del-Canto were merely speculative, and that Del-Canto's actions were not abuse but were expressions of affection towards Plaintiff.

36. Maguire failed to take any official action in connection to Del-Canto's abusive behavior towards plaintiff.

37. Plaintiff graduated from FIU during the summer semester of 2019.

38. Plaintiff had plans to attend FIU again to pursue a master's degree but was reluctant to do so because of his fear of Del-Canto.

39. On September 28th, 2019, Plaintiff contacted Nolan to discuss Del Canto's actions towards Plaintiff and Plaintiff's safety and well-being a FIU.

40. On October 1st, 2019, Nolan reported Plaintiff to FIU police, falsely accusing Plaintiff of trying to stalk Del-Canto.

41. When FIU police finally contacted Plaintiff on October 17th, 2019, Plaintiff reiterated that he had no desire to contact Del-Canto and in fact was consciously trying to avoid her.

42. However, despite Plaintiff's insistence that he was trying to avoid Del-Canto, and having no evidence to the contrary, FIU Police took the drastic step of permanently banning Plaintiff from the FIU campus.

43. These events had a profound and negative effect on Plaintiff's mental health.

44. On October 22nd, 2019, Plaintiff was committed to a hospital after telling his sister that he felt worthless and wanted to die.

45. Plaintiff was diagnosed with a Depressive Disorder.

### V. FIRST CAUSE OF ACTION

### National Origin Discrimination under Title VI of the Civil Rights Act of 1964

46. Plaintiff incorporates by reference all preceding paragraphs in this complaint.

47. Title VI of the Civil Rights Act of 1964 (20 U.S.C. §§ 2000d) states in pertinent part: No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

48. At all times herein mentioned, FIU was a public university that received federal financial assistance through grants and federally assisted tuition payments collected from students. Thus, FIU is a recipient of Federal financial assistant for purposes of Title VI of the Civil Rights Act of 1964, 20 U.S.C. §§ 2000d.

49. Accordingly, FIU staff behavior during any activities organized through FIU, including classes or other work activity falls under the ambit of Title IV of the Civil Rights Act of 1964. Therefore, any and all behavior of FIU staff that causes discrimination on the basis of national origin during an FIU related activity is prohibited under Title IV of the Civil Rights Act of 1964.

50. Nolan violated Plaintiff's rights under Title IV of the Civil Rights Act of 1964 when, having awareness of Plaintiff's national origin, she undertook the following actions against Plaintiff while he was a student in her class during the summer semester of 2018:

    i. Repeatedly demanding that Plaintiff "speak Chinese" in front of the class. Plaintiff was singled out for this request due to his national origin.

    ii. Calling Plaintiff "racist" when he refused to comply with her request to speak Chinese. This pejorative language was used against Plaintiff on the basis of his national origin.

    iii. Making Asian-oriented racial remarks, including a statement to the effect of "non-Asian people who eat at Panda Express are racist". This statement implies that only people of Asian descent can properly eat at Panda Express and singles out Plaintiff on the basis of his national origin.

51. Maguire further violated Plaintiff's rights under Title IV of the Civil Rights Act of 1964, when he failed to initiate any disciplinary proceedings against Nolan after Plaintiff made him aware of Nolan's racially charged remarks.

52. Board of Trustees violated Plaintiff's rights under Title IV of the Civil Rights Act of 1964 by enabling a work environment whereby Nolan felt empowered to make racially charged remarks.

53. As a direct and proximate result of Defendant's unlawful discrimination Plaintiff has sustained and continues to sustain emotional injuries and damages.

## SECOND CAUSE OF ACTION
## Violation of Title IX of The Education Act Amendments Of 1972

54. Plaintiff incorporates by reference all preceding paragraphs in this complaint.

55. Title IX of the Education Act Amendments of 1972 (20 U.S.C. §§ 1681) prohibits discrimination based on sex in educational institutions receiving federal funding.

56. At all times herein mentioned, FIU was a public university that received federal financial assistance through grants and federally assisted tuition payments collected from students. Thus, FIU is a recipient of Federal financial assistant for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

57. Schools receiving federal funding are required to employ at least one Title IX coordinator, a staff member responsible for Title IX compliance. 34 CFR 106.44 provides that that such institutions must respond affirmatively to when they receive "actual knowledge" that a student may have been discriminated against on the basis of sex. This creates a duty for institutions to cause their Title IX coordinator to promptly investigate allegations of sex-based discrimination and provide accommodations to students that have suffered sex-based discrimination.

58. The US Department of Education, Office for Civil Rights has stated that the August 2020 alterations to Title IX protections cannot be applied

retroactively.[1] Among other changes, the August 2020 alterations curtailed Title IX jurisdiction over off-campus sex-based discrimination. These alterations do not apply to the instant case.

59. Accordingly, FIU staff and student behavior falls under the ambit of Title IX protections. Therefore, any and all behavior of FIU staff and student that causes discrimination on the basis of Sex against an FIU student is prohibited under Title IX of the Education Acts Amendments of 1972.

60. Nolan committed sex-based discrimination against Plaintiff when she:

   i. Continually asked Plaintiff if he had a girlfriend. These questions were conditioned on Plaintiff's male sex and had the effect of making Plaintiff feel uncomfortable.

   ii. Tried to induce Del-Canto to kiss Plaintiff. This was an attempt to create unwanted physical contact on Plaintiff due to his sex.

61. Del-Canto committed sex-based discrimination against Plaintiff when she:

   i. Accused plaintiff of being controlling and complained about Plaintiff's reserved nature. This represents an attempt by Del-Canto to establish a controlling sex-based dynamic over Plaintiff.

---

[1] https://www2.ed.gov/about/offices/list/ocr/blog/20200805.html

ii. Locked Plaintiff in her car for over 30 minutes and interrogated Plaintiff about whether he had romantic feelings for her. Del-Canto became progressively more aggressive and threatening as Plaintiff continued to reiterate that he was not romantically interested in her. This was an attempt by Del-Canto to coerce Plaintiff into accepting a romantic relationship with her against his will.

62. William Maguire failed to uphold his Title IX obligations when Plaintiff reported Del-Canto's abusive sex-based behavior to him, and he failed to initiate any Title IX report or investigation.

63. Board of Trustees violated Plaintiff's rights under Title IX by enabling a work environment whereby Maguire failed to properly discharge his Title IX obligations.

64. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained mental and emotional harm.

### THIRD CAUSE OF ACTION
### Breach of contract

65. Plaintiff incorporates by reference all preceding paragraphs in this complaint.

66. Plaintiff and Defendant FIU Board of Trustees entered into a contract by which Defendant offered admission to FIU to Plaintiff and for which Plaintiff accepted FIU offer and attended FIU.

67. There was a mutual exchange of consideration by which Plaintiff attended the FIU involving payments and expenditure of time and FIU made its services available to Plaintiff including educational opportunities.

68. As part of the contract was the existence of policies set forth by FIU. As a condition of attending FIU, Plaintiff and FIU were both expected to be bound by those policies. Included within those policies were policies concerning discrimination based on sex and national origin. These policies were part of the bargain between Plaintiff and FIU. Without agreeing to abide by those policies, Plaintiff would not have been permitted to attend FIU.

69. Defendant FIU breached the contract as discussed more fully within this complaint by not properly providing Plaintiff with an environment free from national origin and sex discrimination.

70. As a direct and proximate result of Defendant's breach, Plaintiff has sustained mental harm and will continue to sustain injuries and damage.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them relief as follows:

(1) Compensatory damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress;

(2) Punitive damages against the defendant;

(3) Attorneys' fees;

(4) Costs of the suit; and

(5) Such other relief as the Court may deem proper.

## VII.  JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Date: October 9, 2023

Respectfully Submitted,

*Yilun Chen*

Yilun Chen (*pro se*)
1703 SW 110th Terrace
Davie, Florida 33324
Tel: (954) 741-9236

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE

PRIORITY MAIL

- Date of delivery specified
- USPS TRACKING™ included to many major international destinations
- Limited international insurance
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs declaration label may be required.

* Domestic only

PS00001000014

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

P

US POSTAGE & FEES PAID
PRIORITY MAIL
ZONE 5 FLAT-RATE ENVELOPE
ComBasPrice

062S0001443247
17405176
FROM 29720

stamps endicia
10/17/2023

**USPS PRIORITY MAIL ®**

Yilun Chen
1703 SW 110th Terrace
Davie FL 33324

C075

SHIP TO: CLERK, U.S.D.C. SOUTHERN DISTRICT OF FLORIDA
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1805

**USPS TRACKING #**

9405 5112 0620 3678 5667 63

REC'D BY ____ D.C.
OCT 20 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

USMS INSPECTED
By ____

PRESS FIRMLY TO SEAL

* Domestic only. × For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.



