UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24029-KMM

YILUN CHEN,

    Plaintiff,

v.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** comes before the Court upon Defendant Florida International University Board of Trustees' ("FIU BOT") Motion to Dismiss Plaintiff's Complaint. (ECF No. 13). Plaintiff responded to Defendant's Motion (ECF No. 22), to which Defendant replied (ECF No. 28).[1] The Court held a hearing on April 30, 2024 and heard argument from both parties.[2] Having carefully considered the Motion, Responses, Replies, the record, and being otherwise duly advised on the matter, the undersigned recommends that the Motion be **GRANTED, in part**, and **DENIED, in part**.

**I.**    **BACKGROUND**

Plaintiff brings three causes of action against FIU BOT: National Origin Discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Title VI); Sex discrimination

---

[1] This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A), by the Honorable K. Michael Moore for report and recommendation on dispositive motions. (ECF No. 6).

[2] While Plaintiff originally filed his Complaint *pro se*, he has since retained counsel, who filed a Response to Defendant's Motion to Dismiss and appeared at the April 30, 2024 hearing on his behalf. *See* (ECF No. 22).

1

under Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 (Title IX); and Breach of Contract under Florida common law.

In the summer of 2018, Plaintiff was a student at Florida International University ("FIU"), where he was enrolled in a photography class taught by Peggy Nolan. (ECF No. 1 at ¶ 10). During one class, Nolan asked Plaintiff to speak Chinese in front of the class; when Plaintiff declined, Nolan called him a racist. (*Id.* at ¶¶ 12, 14). Plaintiff is a United States Citizen who was born in Taiwan. Nolan allegedly made other "racially charged" comments, including "that non-Asian people who eat at Panda Express are racist." (*Id.* at ¶ 15).

Plaintiff further alleges that Nolan made uncomfortable remarks about his romantic life: Nolan asked him if he had a girlfriend and asked an individual named Alexandra Del-Canto to kiss him. (*Id.* at ¶ 17). Plaintiff maintained a friendship with Del-Canto. (*Id.* at ¶ 23).

On June 18, 2018, Plaintiff emailed William Maguire to report Nolan's behavior. (*Id.* at ¶ 19). The next day, Plaintiff received an email from Nolan apologizing for calling him racist (*Id.* at ¶ 21), though Plaintiff alleges Nolan was never punished or reprimanded. (*Id.* at ¶ 22).

A year later, on June 16, 2019, Plaintiff alleges that after seeing a movie with Del-Canto, she locked the doors of her car and forced Plaintiff to stay with her over the 30-minute car trip, while she questioned Plaintiff on whether he had romantic feelings for her. (*Id.* at ¶¶ 27–31). When Plaintiff rejected Del-Canto's advances, she allegedly became hostile and threatening, terrifying Plaintiff to the point of shaking. (*Id.*).

On July 21, 2019, Plaintiff met with Maguire to discuss the Del-Canto incident. (*Id.* at ¶ 33). Plaintiff alleges that during the meeting Maguire did not take official action in connection with the incident, laughing instead. (*Id.* at ¶¶ 34, 36). Plaintiff finally graduated during the summer semester of 2019, though he alleges that he postponed pursuing a master's degree at FIU due to

his fear of Del-Canto. (*Id.* at ¶¶ 37, 38). After Plaintiff contacted Nolan to discuss the Del-Canto situation on September 28, 2019, Nolan allegedly reported Plaintiff to FIU Police for stalking Del-Canto, on October 1, 2019. (*Id.* at ¶¶ 39, 40). When FIU Police interviewed Plaintiff, on October 17, 2019, he explained he was trying to avoid Del-Canto. (*Id.* at ¶ 41). Nevertheless, FIU Police banned Plaintiff from campus. (*Id.* at ¶ 42).

Plaintiff alleges that these events negatively affected his mental health. (*Id.* at ¶ 43). On October 22, 2019, Plaintiff was committed to a hospital after expressing suicidal thoughts to his sister; he was diagnosed with depressive disorder. (*Id.* at ¶¶ 44, 45).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim for relief for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the Plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

Although a plaintiff need not provide "detailed factual allegations," a complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable" but the

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## III.   DISCUSSION

Defendant's Motion to Dismiss raises four grounds for dismissal. First, Defendant avers that Plaintiff's claims are time-barred. Second, Defendant seeks dismissal on the grounds that the Complaint is an impermissible shotgun pleading. Third, Defendant argues that Plaintiff's breach of contract claim should be dismissed because FIU BOT is subject to immunity under the Eleventh Amendment. U.S. Const. amend. XI. Finally, Defendant argues that Plaintiff's claims under Title VI and Title IX fail to state a claim.[3]

The Court will consider Defendant's Motion out of order, as more fully set out below.

### A.   Plaintiff's Entire Complaint is a Shotgun Pleading Subject to Dismissal.

Defendant argues that, because each Count incorporates the allegations of the preceding Count, the Complaint is an impermissible shotgun pleading. The Court agrees.

Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 10(b) requires a party to state its claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Eleventh Circuit has provided substantial guidance on shotgun pleadings, identifying four such categories:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The

---

[3] Defendant also moved to strike Plaintiff's prayer for punitive damages for his Title VI and Title IX claims. Plaintiff conceded that he is not entitled to punitive damages for these claims and agreed not to pursue them. (ECF No. 22 at 14).

> next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). A district court may dismiss a complaint as a shotgun pleading on that basis alone. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (citing *Weiland*, 792 F.3d at 1320).

Plaintiff argues that he incorporated all preceding paragraphs to each claim "for the sake of completeness." (ECF No. 22 at 9). Plaintiff identifies the allegations which follow to include "not only the law of each cause of action but also the relevant facts for the specific cause of action." (*Id.*). However, Plaintiff's argument demonstrates his failure of drafting each cause of action to provide reasonable notice of the grounds for each claim. Defendant would be left to rely on the specific facts alleged in addition to all preceding paragraphs.

Dismissal for failure to satisfy Rule 8 generally requires that the court afford the plaintiff leave to amend a first complaint. "When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim." *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). Accordingly, the undersigned recommends

5

that the Court dismiss the Complaint with leave to amend, and instruct Plaintiff that an amended complaint must include only factual allegations that support each of his claims. The amended complaint must also clearly, simply, and concisely state which allegations support each claim.

Because leave to amend is recommended, the Court further analyzes the deficiencies raised in Defendant's motion to dismiss based on Rule 12(b)(6), as repetition of such deficiencies would again warrant dismissal. *See Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018) ("Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction on how to proceed with a final, amended pleading . . . .").

**B.    Plaintiff's Title IX Claim Fails to State a Cause of Action.**

Defendant argues that Plaintiff's Title IX claim fails to state a cause of action because his allegations are ambiguous as to the nature of the discrimination and the relationships of the bad actors to FIU BOT.

Under Title IX, "[n]o person. . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In claims based on teacher-on-student sexual harassment, Plaintiff must allege that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs" and responds with "deliberate indifference to discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). In cases of student-on-student harassment, Plaintiff must prove five elements:

> (1) the defendant must be a Title IX funding recipient; (2) an "appropriate person" must have actual knowledge of the alleged discrimination or harassment; (3) the

6

discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive"; (4) the funding recipient acted with "deliberate indifference to known acts of harassment in its programs or activities"; and (5) the discrimination "effectively barred the victim's access to an educational opportunity or benefit."

*Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241, 1257–58 (S.D. Fla. 2019) (quoting *Hill v. Cundiff*, 797 F.3d 948, 970 (11th Cir. 2015)).

Plaintiff's allegations arising from his interaction with Del-Canto fail to allege her relationship to the school. Whether Plaintiff is claiming he was sexually harassed by a teacher, student, or administrator is material; this ambiguity creates confusion on what standard should be applied to Plaintiff's claim. Indeed, the Eleventh Circuit has recognized elements for student-on-student sexual harassment claims, *see generally Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282 (11th Cir. 2007), which are stricter than the standard for teacher-on-student harassment claims, *see Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010). Because Plaintiff's Complaint fails to allege facts sufficient to identify whether his allegations regarding the Del-Canto incident reflect a claim for teacher-and-student harassment or student-on-student harassment, Defendant's motion to dismiss Count II is due to be granted.[4]

Moreover, regardless of whether Plaintiff's sex-discrimination claim sounds in teacher-on-student harassment, student-on-student harassment, or both, Plaintiff still must establish that an appropriate person had actual knowledge of the discriminatory acts which was met with deliberate

---

[4] To the extent Plaintiff is attempting to allege a claim of student-on-student harassment, Plaintiff has also failed to allege that the discrimination he suffered was "severe, pervasive, and objectively offensive," so as to bar Plaintiff's "access to an educational opportunity or benefit." *Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d at 1257–58. To be severe, pervasive, and objectively offensive, the discrimination "must be more widespread than a single instance of one-on-one peer harassment" and that the effects of the harassment must "touch the whole or entirety of an educational program or activity." *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003). Should Plaintiff on amendment attempt to set out a student-on-student harassment claim, the facts alleged must satisfy the Eleventh Circuit's standard for severe, pervasive, and objectively offensive or be subject to dismissal.

indifference. *See Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d at 1257–58; *Gebser*, 524 U.S. at 290.

Plaintiff alleges that he reported Nolan's comments in 2018 to Maguire (ECF No. 1 at ¶ 19). He returned to Maguire in 2019 to report the Del-Canto incident, and later reported the incident to Nolan. (*Id.* at ¶¶ 34, 39). Absent from Plaintiff's complaint is any allegation that either Maguire or Nolan had appropriate authority to "institute corrective measures" to address the discriminatory acts. *See Gebser,* 524 U.S. at 290; *see also Kono v. Univ. of Miami*, No. 19-22076-CIV, 2020 WL 3129479, at *4 (S.D. Fla. June 12, 2020) (dismissing Title IX complaint on grounds that Plaintiff failed to allege that the individual to whom discrimination was reported had the authority to take corrective action).

Accordingly, in addition to the above admonishment to avoid shotgun pleading, Plaintiff should bear these pleading issues in mind in the event he seeks to amend his Title IX claim.

C.  **Plaintiff's Title VI Fails to State a Cause of Action.**

"Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance." *Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, No. 15-24114-CIV, 2019 WL 12384664, at *7 (S.D. Fla. Jan. 25, 2019), *subsequently aff'd*, 835 F. App'x 418 (11th Cir. 2020); 42 U.S.C. § 2000d. "Title VI itself, like the Fourteenth Amendment, bars only intentional discrimination[.]" *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993). Plaintiff "must demonstrate that the challenged action was motivated by an intent to discriminate." *Carr v. Bd. of Regents of Univ. Sys. of Georgia*, 249 F. App'x 146, 149 (11th Cir. 2007). "Discriminatory intent may be shown by demonstrating 'substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and

8

discriminatory statements in the legislative or administrative history of the decision.'" *Arrington*, WL 12384664, at *7 (quoting *Elston*, 997 F.2d at 1406).

Defendant argues the facts alleged do not support a claim for intentional discrimination on the basis of national origin. Plaintiff responds by reiterating that, because of his Taiwanese heritage, he was treated differently than other students when asked to speak Chinese in front of the entire class and subsequently being called a racist. (ECF No. 22 at 13). Plaintiff acknowledged that Nolan apologized to Plaintiff, but claims he was damaged by being labeled a racist. (*Id.* at 13–14).

Beyond arguing that Nolan's discriminatory actions were intentional, Plaintiff has pled no facts to support his conclusory allegation. He has not, for example, alleged any disparate impact he suffered or departure from norms generally followed by a decision-maker. Indeed, Plaintiff's claim does not identify any decision-maker involved in the claim, as discussed above.

Thus, should Plaintiff attempt to amend his Title VI claim, he should proceed mindful of the claim's pleading requirements.

**D.    Plaintiff Has Failed to Establish an Express Contract to Overcome Defendant's Sovereign Immunity Defense to Count III.**

Defendant argues that it is immune to Plaintiff's Breach of Contract claim under the Eleventh Amendment: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States[.]" U.S. Const, amend. XI. Defendant argues that it should be considered an "arm of the state" for sovereign immunity purposes. (ECF No. 13 at 6). Defendant avers that any contract between Plaintiff—a student—and Defendant—his university—is implied-in-fact. In response, Plaintiff seems to make a policy argument, reasoning that if Eleventh Amendment immunity does not extend to counties or municipalities, then it also should not extend to a university. (ECF No. 22 at

11) (citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977)).  Plaintiff also argues that he "entered into a signed contract with Defendant for service of his education." (*Id.*).  Defendant replies that Plaintiff failed to allege an express contract, and asks the Court to require Plaintiff to attach any signed Contract to his Complaint.  (ECF No. 28 at 5).

The Court must ask whether the state of Florida considers FIU BOT "a part of its government, exercises great control over it, funds it, and pays judgments entered against it."  *Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc.*, 861 F.3d 1234, 1235 (11th Cir. 2017).  The Court agrees with fellow Courts in this district that have held that FIU BOT is an "arm of the state."  *See e.g.*, *McLaughlin v. Fla. Int'l Univ. Bd. of Trustees*, 533 F. Supp. 3d 1149, 1170 (S.D. Fla. 2021), *aff'd*, No. 21-11453, 2022 WL 1203080 (11th Cir. Apr. 22, 2022); *Pyatt v. Fla. Int'l Univ. Bd. of Trustees*, No. 1:20-CV-24085, 2020 WL 6945962, at *10 (S.D. Fla. Nov. 25, 2020).

Further, Defendant is correct that Plaintiff does not allege that an express contract exists.  *See McLaughlin*, 533 F. Supp. 3d at 1172 (dismissing claim for breach of fiduciary duty where Plaintiff failed to allege a written contract).  During oral argument, however, Plaintiff's counsel represented that an express contract existed between Plaintiff and Defendant.

Absent an express contract, Defendant should be held immune from Plaintiff's breach of contract claim.  However, at this posture, the Court cannot decide Defendant's sovereign immunity defense absent clarity on the existence of an express contract.  Accordingly, even without the baseline sin of shotgun pleading, Plaintiff's breach of contract claim would be dismissed without prejudice, with leave to amend to include the express provision in the contract which Defendant allegedly breached.  *See Noble House, LLC v. Derecktor Fla., Inc.*, No. 0:20-CV-62438, 2021 WL 4147745, at *3 (S.D. Fla. Sept. 13, 2021).  Still, Plaintiff is reminded that pleadings alleging any

such contract shall be governed by the strict standards of Rule 11 requiring a good faith basis for any such allegations. Fed. R. Civ. P. 11.

**E.     It Is Not Apparent on the Face of this Complaint that Counts I and II Are Barred by the Statute of Limitations.**

Defendant argues that Plaintiff's civil rights claims are time-barred under Florida's statute of limitations. *See* Fla. Stat. § 95.11(3)(p) (West 2018).[5] Plaintiff's Title VI and Title IX claims are subject to states' statutes of limitations period for personal injury cases. *See Zadoorian v. Gwinnett Tech. Coll.*, No. 22-14206, 2024 WL 1554362, at *3 (11th Cir. 2024) (applying state personal injury statute of limitations actions for Title VI claims); *Doe No. 6 v. Sch. Bd. of Highlands Cnty. Fla.*, No. 2:19-CV-14487, 2020 WL 5112698, at *3 (S.D. Fla. Aug. 30, 2020) (applying state personal injury statute of limitations for Title IX claims). However, "federal law controls the date on which the cause of action accrued and the limitations period began to run." *Id.* at *3. Federal Courts apply the "discovery rule," which states that a cause of action accrues "when the plaintiff knew or should have known of his injury and its cause." *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir. 1997); *see also Sch. Bd. of Highlands Cnty. Fla*, 2020 WL 5112698, at *3.

The Parties agree that Florida's four-year statute of limitations here applies but dispute when Plaintiff's civil rights claims accrued. Defendant argues that Plaintiff's claim should be dismissed because factual allegations for FIU BOT's conduct spans between June 18, 2018—when Plaintiff reported his Professor's comments to Maguire—and October 17, 2019—when FIU Police conducted its investigation of Plaintiff. Plaintiff responds that the cause of action only accrued

---

[5] Florida's legislature amended section 95.11 in 2023. However, the applicable statute of limitation is that which was operative at the time Plaintiff's claim accrued. *See* FL LEGIS 2023-15, 2023 Fla. Sess. Law Serv. Ch. 2023-15 (C.S.C.S.H.B. 837) (WEST) ("Section 28. The amendments made by this act to § 95.11, Florida Statutes, apply to causes of action accruing after the effective date of this act.").

11

once he became aware of the full scope of his damages, when he was committed to the hospital on October 22, 2019. (ECF No. 22 at 2).

The Parties critically disagree on whether the last alleged act—that is, Plaintiff's hospitalization, which he alleges was the culmination of the "profound and negative effect on" his mental health—triggered the running of the statute of limitations; remarkably, neither advanced any caselaw to support their respective position. "In evaluating when a limitations period began to run, courts look to whether a plaintiff could have sued for the alleged injury." *Zadoorian*, 2024 WL 1554362, at *5. "Plaintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir. 1996). "This rule requires a court first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them." *Id.* Overall, however, "[c]laims of discrimination accrue when the plaintiff is informed of the discriminatory act." *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998). Because Plaintiff is bringing two separate discrimination claims based on discrete discriminatory acts, the Court will address each Count separately.

Looking first to Plaintiff's claim for national origin discrimination under Title VI, Plaintiff alleges that Nolan discriminated against Plaintiff through her actions in the summer semester of 2018 and Maguire further violated Plaintiff's rights when he failed to initiate disciplinary proceedings against Nolan. (ECF No. 1 at ¶¶ 50–51). Plaintiff alleges he reported Nolan's behavior to Maguire on June 18, 2018, with Nolan emailing Plaintiff an apology on June 19, 2018. (*Id.* at ¶¶ 19, 21).

Plaintiff's claim for sex discrimination under Title IX arises from the actions of three individuals. First, Plaintiff alleges that Nolan committed sex-based discrimination through her

statements in class in the summer semester of 2018. (ECF No. 1 at ¶¶ 60, 17). Plaintiff next claims that Del-Canto committed sex-based discrimination against Plaintiff during their encounter in her car, which took place on June 16, 2019. (*Id.* at ¶¶ 61, 27). Finally, Plaintiff alleges that Maguire "failed to uphold his Title IX obligations" when Plaintiff's reported Del-Canto's behavior, and he "failed to initiate any Title IX report or investigation." (*Id.* at ¶ 62). Plaintiff alleges that he reported Del-Canto's behavior in a meeting on July 21, 2019. However, it is not apparent whether Plaintiff's claim purports to include any allegations related to Plaintiff reporting the Del-Canto incident to Nolan on September 28, 2019 (*Id.* at ¶ 39) or Nolan's report that Plaintiff was stalking Del-Canto on October 1, 2019. (*Id.* at ¶ 40). Nor is it clear whether Plaintiff would have the Court consider Plaintiff's October 17, 2019 interview with FIU Police and subsequent banning from FIU's campus as part of his sex-discrimination claim. (*Id.* at ¶ 41). Taking all facts and reasonable inferences in the light most favorable to the Plaintiff,[6] the Court will consider that these factual allegations make up part of Plaintiff's sex-discrimination claim.

      Although a plaintiff is not required to negate an affirmative defense, such as a statute of limitations bar, in his complaint, "a claim may be dismissed on limitations grounds under Rule 12(b)(6) if it is 'apparent from the face of the complaint' that the limitations period has run." *Pinto v. City of Hollywood*, No. 14-62719, 2015 WL 3744486, at *4 (S.D. Fla. June 15, 2015) (quoting *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir.2004)); *see also J.P.M. v. Palm Beach Cnty. Sch. Bd.*, No. 10-80473-CIV, 2011 WL 13281800, at *6 (S.D. Fla. Mar. 29, 2011) ("To dismiss a claim as time-barred, it must appear beyond a doubt from the complaint itself that the plaintiff can prove no set of facts which would avoid a statute of limitations bar.").

---

[6] As it is required to do. *See Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1319 (11th Cir. 2021).

Despite taking all facts in the light most favorable to Plaintiff, Plaintiff's national origin discrimination claim is likely time-barred.  Plaintiff's complaint was filed with the clerk of courts on October 20, 2023.  (ECF No. 1 at 1).  The discriminatory acts creating the basis for Plaintiff's national origin discrimination claim all took place in the summer of 2018.

However, the timeline for the alleged sex-based discriminatory acts is less clear.  The events surrounding the Del-Canto incident, on the other hand, arose during the summer of 2019, culminating in Plaintiff being banned from campus in October of 2019.  It is not clear from the face of the Complaint whether Plaintiff is relying upon actions taken by FIU Police and, if so, exactly what date FIU Police banned Plaintiff from entering campus.  Nor is it apparent whether Plaintiff is alleging separate discriminatory acts or cumulative facts and circumstances between Nolan's 2018 comments and the Del-Canto incident forming his claim for sex discrimination. *See e.g.*, *Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015) (finding that "cumulative effects and circumstances" were enough to establish deliberate indifference).

To the extent that Plaintiff argues that his hospitalization on October 22, 2019 (ECF No. 1 at ¶¶ 44–45), triggered the statute of limitations for either of his discrimination claim on the grounds that he had not felt the full extent of his injuries, this argument is misplaced. The Eleventh Circuit has rejected the argument that a plaintiff must experience the full expression of his damages for a claim to accrue. *See Karantsalis v. Cty of Miami Springs, Fla.*, 17 F.4th 1316, 1323 (11th Cir. 2021) (reasoning that a Plaintiff need not "know or suffer the full extent of his injury before his cause of action accrues and the statute of limitations begins to run. Rather, a plaintiff must know or have reason to know that he was injured to some extent.").

Nonetheless, given the Eleventh Circuit's "strong preference that cases be heard on the merits," *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1342 (11th Cir. 2014), and mindful that the

Court is recommending dismissal with leave to cure pleading deficiencies, the Court recommends that Defendant's Motion to Dismiss be denied in so far as it seeks to dismiss Plaintiff's discrimination claims as time-barred.

## IV. RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (ECF No. 13) be **GRANTED, in part** and that Plaintiff's Complaint be dismissed, without prejudice. A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) days** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 9th day of July, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE