UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24029-KMM

YILUN CHEN,

     Plaintiff,

v.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

     Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** comes before the Court upon Defendant Florida International University Board of Trustees' Motion to Dismiss Plaintiff's Amended Complaint.  (ECF No. 43).  Plaintiff filed a Response to Defendant's Motion (ECF No. 44), to which Defendant replied (ECF No. 47).[1] Having carefully considered the Motion, Response, Reply, the record, and being otherwise duly advised on the matter, the undersigned recommends that the Motion be **GRANTED.**

I.     **BACKGROUND**

     A.     **Facts**

These facts are taken from Plaintiff's Amended Complaint (ECF No. 39), though the Court notes that the factual allegations are largely identical to those set forth in Plaintiff's first complaint (the "Original Complaint") and previously summarized in my first Report and Recommendations (ECF No. 31). In the summer of 2018, Plaintiff was a student at Florida International University

---

[1] This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) by the Honorable K. Michael Moore for report and recommendation on dispositive motions. (ECF No. 6).

("FIU"), where he was enrolled in a photography class taught by Peggy Nolan. (ECF No. 39 at ¶ 11).  Though Plaintiff was "well known to be soft spoken and somewhat shy," Nolan asked Plaintiff to speak Chinese in front of the class; when Plaintiff declined, Nolan called him a racist. (*Id.* at ¶¶ 12, 13, 15). Plaintiff is a United States Citizen who was born in Taiwan. (*Id.* at ¶ 8). Nolan allegedly made other "racially charged" comments, including "that non-Asian people who eat at Panda Express are racist." (*Id.* at ¶ 16). Plaintiff alleges that Nolan is a "non-ethnic minority member." (*Id.* at ¶ 23).

Plaintiff further alleges that Nolan made uncomfortable remarks about his romantic life: Nolan asked him if he had a girlfriend and asked a student named Alexandra Del-Canto to kiss him. (*Id.* at ¶ 18). Plaintiff maintained a friendship with Del-Canto.  (*Id.* at ¶ 26).

On June 18, 2018, Plaintiff emailed Professor William Maguire to report Nolan's behavior. Maguire's position at FIU is not alleged in the Amended Complaint, beyond his title of professor. (*Id.* at ¶ 20).  The next day, Plaintiff received an email from Nolan apologizing for calling him racist (*id.* at ¶ 22), though Plaintiff alleges Nolan was never punished or reprimanded.  (*Id.* at ¶ 24).

A year later, on June 16, 2019, Plaintiff alleges that after seeing a movie with Del-Canto, she locked the doors of her car and forced Plaintiff to stay with her over a 30-minute car trip through Hollywood, Florida; during the trip Del-Canto questioned Plaintiff on whether he had romantic feelings for her.  (*Id.* at ¶¶ 27–31).  When Plaintiff rejected Del-Canto's advances, she allegedly became hostile and threatening, terrifying Plaintiff to the point of shaking. (*Id*. at ¶¶ 34–35).

On July 21, 2019, Plaintiff met with Maguire to discuss the Del-Canto incident. (*Id.* at ¶ 37). Plaintiff alleges that during the meeting Maguire did not take official action in connection

with the incident, and instead laughed. (*Id.* at ¶ 38). Plaintiff graduated during the summer semester of 2019, though he alleges that he postponed pursuing a master's degree at FIU due to his fear of Del-Canto. (*Id.* at ¶¶ 45, 46). After Plaintiff contacted Nolan to discuss the Del-Canto situation on September 28, 2019, Nolan allegedly reported Plaintiff to FIU Police for stalking Del-Canto, on October 1, 2019. (*Id.* at ¶¶ 47, 48). When FIU Police interviewed Plaintiff, on October 17, 2019, he explained he was trying to avoid Del-Canto. (*Id.* at ¶ 49). Nevertheless, FIU Police banned Plaintiff from campus. (*Id.* at ¶ 50).

Plaintiff alleges that these events negatively affected his mental health. (*Id.* at ¶ 51). On October 22, 2019,[2] Plaintiff was committed to a hospital after expressing suicidal thoughts to his sister; he was ultimately diagnosed with depressive disorder. (*Id.* at ¶¶ 44, 45).

Plaintiff asserts three causes of action against Defendant: National Origin Discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Title VI) based on Nolan's comments; Sex discrimination under Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 (Title IX) based on Nolan's comments and Del-Canto's alleged harassment; and Breach of Contract under Florida common law based on Defendant's failure to follow its own Title VI and Title IX policies.

### B. Procedural History

Defendant's Motion to Dismiss is before the Court on Plaintiff's Amended Complaint. Defendant previously moved to dismiss Plaintiff's Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the First Motion"), arguing that the Original Complaint was a shotgun pleading, the factual allegations failed to state a claim, and Plaintiff's discrimination claims were barred by the statute of limitations. (ECF No. 13). Defendant also argued that it was subject to

---

[2] Elsewhere in the Amended Complaint, Plaintiff alleges that he was hospitalized on October 19, 2022. (ECF No. 39 at ¶¶ 62, 77).

immunity from Plaintiff's breach of contract claim under the Eleventh Amendment. Plaintiff filed his Original Complaint *pro se*; Plaintiff then retained counsel who filed a response to the First Motion on his behalf. *See* (ECF No. 22).

The undersigned entered a Report and Recommendations (ECF No. 31), recommending that the First Motion be granted in part and denied in part. Though the undersigned found that the Original Complaint was a shotgun pleading, the undersigned nevertheless analyzed the other deficiencies raised in Defendant's Motion to Dismiss because "repetition of such deficiencies would again warrant dismissal." (ECF No. 31 at 6) (citing *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018) ("Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction on how to proceed with a final, amended pleading . . . .")). The District Court adopted the undersigned's Report and Recommendations. (ECF No. 33) The District Court granted the First Motion insofar as it sought dismissal of the Original Complaint as a shotgun pleading, but denied the Motion to the extent that it sought to bar Plaintiff from further amending his complaint. Plaintiff was permitted leave to amend.

Plaintiff's Amended Complaint asserts the same three causes of action for National Origin Discrimination under Title VI; Sex-based discrimination under Title IX; and Breach of Contract. Defendant now moves to dismiss those claims, arguing that Plaintiff has failed to correct many of the deficiencies from his Original Complaint: that is, Plaintiff's discrimination claims are still time-barred, Plaintiff has still failed to state a cause of action on his discrimination claims, and Plaintiff has failed to overcome Defendant's claim of immunity to his breach of contract claim.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  All factual allegations are accepted as true and all reasonable inferences are drawn in the Plaintiff's favor.  *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

Although a plaintiff need not provide "detailed factual allegations," a complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*  Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## III.    DISCUSSION

At the outset the Court notes that, despite having the benefit of counsel, Plaintiff's Amended Complaint is nearly identical to his Original Complaint, filed *pro se*. Unsurprisingly, Defendant's present Motion to Dismiss travels on largely the same arguments as its first. What *is* surprising is that Plaintiff's Response to the present Motion is a near facsimile to that which was filed in the first instance,[3] including arguments that have already been disposed of. Consequently,

---

[3] Take, for example, Plaintiff's claim for punitive damages. In the Original Complaint, Plaintiff sought punitive damages against Defendant. (ECF No. 1 at 13). When Defendant's First Motion argued that Plaintiff was not entitled

despite the Court's guidance in the undersigned's Report and Recommendations and the District Court's Order adopting same, Plaintiff's Amended Complaint and arguments in defense suffer from the same deficiencies. Thus, as explained below, Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be granted, and Plaintiff's Amended Complaint should be dismissed with prejudice.

### A.      Plaintiff's Title IX Sex-Based Discrimination Claim Fails to State a Claim.

Plaintiff claims that he was discriminated against on the basis of his sex. This claim is based on Nolan's comments during class in 2018, and the Del-Canto incident, which Plaintiff alleges amounted to sexual harassment by a fellow student. Defendant argues that the claim fails to allege essential elements for a Title IX claim: that any FIU employee acted with deliberate indifference; that an appropriate individual with authority to take corrective action had actual knowledge of the discriminatory acts; that the alleged harassment was severe, pervasive, and objectively offensive; and that Plaintiff was effectively barred access to an educational opportunity or benefit. (ECF No. 43 at 14–15). In response, Plaintiff argues that Defendant was required to "initiate a mandatory Title IX investigation" and failed to do so. (ECF No. 44 at 12).

In the Report and Recommendation analyzing the Original Complaint, the Court noted that there was ambiguity as to whether Plaintiff's claims based on the Del-Canto incident sounded in student-on-student sexual harassment, or teacher-on-student sexual harassment. Plaintiff was advised to clarify Del-Canto's relationship to the school. Notwithstanding this ambiguity, the Court noted that Plaintiff's claim failed in two large respects. First, Plaintiff failed to allege that Nolan

---

to punitive damages under Title IX and Title VI (ECF No. 13 at 12), Plaintiff conceded that "no punitive damages are being sought on the requisite claims." (ECF No. 22 at 14). Nevertheless, Plaintiff's Amended Complaint still sought punitive damages as relief for the whole complaint (ECF No. 39 at 14). Defendant now moves to dismiss Plaintiff's claim for punitive damages on his discrimination claims (ECF No. 43 at 17), and Plaintiff provided an identical concession. (ECF No. 44 at 14).

or Maguire had the authority to take corrective action. (ECF No. 31 at 8) (citing *Kono v. Univ. of Miami*, No. 19-22076-CIV, 2020 WL 3129479, at \*4 (S.D. Fla. June 12, 2020) (dismissing Title IX complaint on grounds that Plaintiff failed to allege that the individual to whom discrimination was reported had the authority to take corrective action)). Second, to the extent Plaintiff was attempting to assert a claim for student-on-student harassment, he failed to allege that the discrimination he suffered was "severe, pervasive, and objectively offensive," so as to bar Plaintiff's "access to an educational opportunity or benefit." (ECF No. 31 at 7 n.4) (quoting *Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241, 1257–58 (S.D. Fla. 2019)). Though Plaintiff has since alleged that Del-Canto was a fellow student, s*ee* (ECF No. 39 at ¶ 18), the Amended Complaint does not cure the noted deficiencies.

Under Title IX, "[n]o person. . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In claims based on teacher-on-student sexual harassment, Plaintiff must allege that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs" and responds with "deliberate indifference to discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). In cases of student-on-student harassment, Plaintiff must prove five elements:

> (1) the defendant must be a Title IX funding recipient; (2) an "appropriate person" must have actual knowledge of the alleged discrimination or harassment; (3) the discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive"; (4) the funding recipient acted with "deliberate indifference to known acts of harassment in its programs or activities"; and (5) the discrimination "effectively barred the victim's access to an educational opportunity or benefit."

*Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d at 1257–58 (quoting *Hill v. Cundiff*, 797 F.3d 948, 970 (11th Cir. 2015)). In the context of student-on-student harassment, "[t]he behavior must be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1288 (11th Cir. 2003).

The Amended Complaint continues to lack the allegation that an appropriate person had actual knowledge of either Nolan's or Del-Canto's harassment.  In his Amended Complaint Plaintiff alleges that he attempted to report Nolan's comments to Maguire in June of 2018 (ECF No. 39 at ¶ 20) and reported the Del-Canto incident to both Maguire and Nolan. (*Id.* at ¶¶ 38, 47). The Amended Complaint identifies Nolan as a teacher (*id.* at ¶ 11) and Maguire as a professor (*id.* at ¶ 20), but once again does not allege that—in their capacities as professors or teachers—Maguire and Nolan had the authority to take corrective action. *Cf. Weis v. Bd. of Trs. of Fla. Gulf Coast Univ.*, No. 219CV503, 2020 WL 2219192, at *5 (M.D. Fla. May 7, 2020) (finding complaint plausibly alleged that "appropriate official" had knowledge where complaint alleged that department chair to whom professor's misconduct was reported had the authority to take appropriate remedial action). On the contrary, the Amended  Complaint alleges that "*FIU* has the ability to take corrective measures against Nolan" and "*FIU* had the ability, and was mandated . . . under Title IX law, to initiate an investigation that could have provided protections to Plaintiff." (ECF No. 39 at ¶¶ 43, 44) (emphasis added).

Moreover, Plaintiff's allegation that Maguire "failed to take any official action" in connection with Del-Canto's behavior and "was required to report the sexual harassment within FIU," (*id*. at ¶¶ 40, 41) does not support an inference that Maguire was an "appropriate person." As observed by the court in *Kono v. University. of Miami*, "[e]ven if the University policy required

faculty to report harassment to an appropriate person, this policy would not take away the requirement that a Title IX plaintiff must allege that an 'appropriate person' had actual knowledge of the behavior." 2020 WL 3129479, at *4. This failure is fatal to Plaintiff's Title IX claim and should result in its dismissal. *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007) ("In the absence of any allegations that an appropriate person with the Board of Regents had actual knowledge of the acts that Williams alleges constitute discrimination, Williams's Title IX claim against the Board of Regents cannot survive a 12(b)(6) motion to dismiss.").

Plaintiff's Amended Complaint also fails to set forth a claim for student-on-student harassment insofar as he fails to plausibly allege that Del-Canto's alleged harassment was "severe, pervasive, and objectively offensive enough" to have a "systemic effect" of denying equal access to an educational program or activity. *See Hawkins*, 322 F.3d at 1289. The Supreme Court has considered it "unlikely" that Congress would have thought a theoretical "single instance of sufficiently severe one-on-one peer harassment" rose to the necessary level of "systemic." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652–53 (1999).

In light of *Davis*, the Eleventh Circuit has since stated that "gender discrimination must be more widespread than a single instance of one-on-one peer harassment and that the effects of the harassment touch the whole or entirety of an educational program or activity." *Hawkins*, 322 F.3d at 1289. Thus, the Eleventh Circuit has recognized few instances where a single incident was sufficient to satisfy Title IX. *See A.P. v. Fayette Cnty. Sch. Dist.,* No. 21-12562, 2023 WL 4174070, at *6 (11th Cir. June 26, 2023) ("Only in 'unique' circumstances—when sexual assaults were part of a 'continuous series of events' constituting a larger scheme—have we found a single sexual assault incident sufficient to satisfy Title IX."). For instance, in *Williams v. Board of Regents*, the

Eleventh Circuit held that an incident where a student was "gang rape[d]" by two student athletes and suffered an attempted assault by a third was pervasive because it featured "a continuous series of events." 477 F.3d at 1297–98. And, in *Hill v. Cundiff*, the Eleventh Circuit held that a claimant's rape that was "orchestrated by school officials during a botched rape-bait scheme" and preceded by the victim being propositioned for sex by the perpetrator for two weeks was also the "culmination of a 'continuous series of events.'" 797 F.3d at 973 (quoting *Williams*, 477 F.3d at 1298).

The facts alleged by Plaintiff in the single Del-Canto incident do not compare to the incidents in *Williams* and *Hill* which were found to demonstrate a combination of severity, objective offensiveness, and—by virtue of their continuing nature—pervasiveness. *Cf. A.P. v. Fayette Cnty. Sch. Dist.*, 2023 WL 4174070, at *7 (holding that alleged rape on school campus "involve[d] the severe single incident the Supreme Court has said isn't actionable under Title IX") (citing *Davis*, 526 U.S. at 652–53). Here, Plaintiff describes a single incident on June 16, 2019 in which Plaintiff and Del-Canto attended a movie and, in lieu of driving Plaintiff back to his car, Del-Canto drove around Hollywood, Florida with her doors locked, "interrogat[ing] Plaintiff about whether he had romantic feelings for her." (*Id.* at ¶¶ 31, 32). Plaintiff alleges he experienced discrimination because "[t]his was an attempt by Del-Canto to coerce Plaintiff into accepting a romantic relationship with her against his will." (*Id.* at ¶ 69.ii).  During the same incident, Plaintiff claims Del-Canto "[a]ccused Plaintiff of being controlling and complained about Plaintiff's reserved nature"; Plaintiff concludes that through her comments, Del-Canto attempted to "establish a controlling sex-based dynamic over Plaintiff." (*Id.* at ¶ 69.i). This single off-campus interaction, uncomfortable as it may have been, does not demonstrate conduct that is severe, pervasive, and objectively offensive. Coupled even with Plaintiff's claim that Del-Canto had "the

10

assistance of Nolan" in her pursuit of a romantic relationship (ECF No. 39 at ¶ 33)—presumably through Nolan's 2018 comments—Plaintiff still has not met the high standard of alleging severe, pervasive, and objectively offensive conduct.[4]

Despite the Court's guidance, Plaintiff's Title IX claim still fails to state a claim. Accordingly, for the same reasons set forth in the Report and Recommendation on Defendant's First Motion, Plaintiff's Title IX claim should be dismissed. And, because Plaintiff—who here is represented by counsel—has failed on the same grounds in his second attempt to state a claim, the Court need not *sua sponte* grant Plaintiff leave to amend. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Robinson v. United States*, No. 24-12513, 2024 WL 4866864, at *2 (11th Cir. Nov. 22, 2024) ("If the amended complaint does not remedy the defects [identified in a motion to dismiss] and the plaintiff does not move to amend, then the court may dismiss the complaint with prejudice.") (citing *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)). Thus, the claim should be dismissed with prejudice.

### B. Plaintiff's Title VI National Origin Discrimination Claim Fails to State a Claim.

Defendant argues that Plaintiff has failed to allege facts supporting intentional discrimination against Plaintiff on the basis of national origin. Plaintiff, in briefing that is identical to his briefing in response to the first motion to dismiss, reiterates that Professor Nolan

---

[4] Defendant also argues that Plaintiff was not deprived of access to education because he ultimately graduated with his degree during the summer semester of 2019. *See* (ECF No. 39 at ¶ 45). Because the Court has already concluded that the alleged conduct is not sufficiently severe, pervasive and objectively offense, the Court need not reach whether Plaintiff's allegation that he would have pursued a master's degree "but was reluctant to do so because of his fear of Del-Canto" (*id.* at ¶ 44) is sufficient to show a denial of opportunity.

intentionally discriminated against him and Plaintiff has "now been labeled as a racist." (ECF No. 44 at 14). Plaintiff's response also asserts that "Professor Nolan failed to account for the cultural differences throughout the entire class," (ECF No. 44 at 13)—an assertion that is not alleged in his Amended Complaint.

"Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance." *Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, No. 15-24114-CIV, 2019 WL 12384664, at *7 (S.D. Fla. Jan. 25, 2019), *aff'd*, 835 F. App'x 418 (11th Cir. 2020); *see* 42 U.S.C. § 2000d. Because Title VI bars only intentional discrimination, Plaintiff "must demonstrate that the challenged action was motivated by an intent to discriminate." *Carr v. Bd. of Regents of Univ. Sys. of Georgia*, 249 F. App'x 146, 149 (11th Cir. 2007). "Discriminatory intent may be shown by demonstrating 'substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision.'" *Arrington*, WL 12384664, at *7 (quoting *Elston v. Talladega Cty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993)).

In the undersigned's previous Report and Recommendations, I found that Plaintiff "pled no facts to support his conclusory allegation" that Nolan's discriminatory actions were intentional. (ECF No. 31 at 9). I noted in example that Plaintiff had not "alleged any disparate impact he suffered or departure from norms generally followed by a decision-maker" nor had Plaintiff identified "any decision-maker involved in the claim." (*Id.*) I advised that Plaintiff should proceed with any amendment "mindful of the claim's pleading requirements." (*Id.*).

Notwithstanding these words of caution, Plaintiff elected not to correct the claim's pleading deficiencies. However, one of the few discernable differences in Plaintiff's Amended Complaint

is the added allegation that "[a]s a result of Plaintiff having been labeled a racist in the FIU and surrounding communities, Plaintiff was harmed." (ECF No. 39 at ¶ 60). Though this allegation may explain how Plaintiff was harmed, Plaintiff still has not alleged an intent to discriminate against him. That is, Plaintiff's allegations do not demonstrate that a decision-maker procedurally or substantively departed from norms, or that he himself suffered substantial disparate impact on the basis of his national origin.

Thus, Plaintiff's Amended Complaint suffers from the same fatal flaw as the Original, and his claim for national-origin discrimination should be dismissed along with his sex-discrimination claim.

### C.        Defendant is Immune from Plaintiff's Breach of Contract Claim.

Plaintiff claims that Defendant entered into an "express contract" in which Defendant offered admission and Plaintiff accepted by attending FIU. (ECF No. 39 at ¶ 78). Defendant argues that it is entitled to sovereign immunity pursuant to the Eleventh Amendment on Plaintiff's breach of contract claim because Plaintiff has failed to allege the existence of an express, written contract. In response, Plaintiff argues first that Defendant should not be entitled to Eleventh Amendment immunity as a matter of policy, and second that Plaintiff and Defendant entered into a contract with Defendant for "service of his education," but Defendant remains the sole party in possession of the contract. (ECF No. 44 at 11).

In recommending dismissal of the Original Complaint, the undersigned found that Defendant was an "arm of the subject" that would be entitled Eleventh Amendment immunity from a breach of implied-contract claim. (ECF No. 31 at 10). Plaintiff's response again raises a policy argument, supported by the same case law, that was disposed of in the first motion. (ECF No. 44

13

at 10). For the same reasons set forth in the first Report and Recommendations (ECF No. 31 at 10), I recommend finding that Defendant is entitled to Eleventh Amendment immunity.

As for Plaintiff's allegations, the undersigned previously found that Plaintiff failed to allege the existence of an express contract but noted that Plaintiff's counsel proffered in open court that an express contract existed. Therefore, I recommended that Plaintiff be granted leave to amend his breach of contract claim with the particular provision of the contract allegedly breached. *See* (ECF No. 31 at 10).[5]

Notwithstanding the Court's clear directive, Plaintiff failed to allege a provision of an express contract. Rather, Plaintiff vaguely alleges in his statement of facts that "Plaintiff entered into an express contract with FIU to enroll at their campus and obtain a Fine Arts degree," and "Plaintiff was to provide Defendant FIU tuition in exchange for an education." (ECF No. 39 at ¶¶ 9, 10). In the paragraphs following his breach of contract claim, Plaintiff alleges in a conclusory fashion that Defendant "failed to abide by their Title IX" and "discrimination policies." (*Id.* at ¶¶ 83, 84). From his Original to his Amended Complaint, Plaintiff made a single revision to the description of the alleged contract: the insertion of the word "express." *Compare* (ECF No. 39 at ¶ 78) *with* (ECF No. 1 at ¶ 66).

Plaintiff's response to the Motion provides no further clarity. Plaintiff submits that "he entered into a signed contract with Defendant for service of his education," and that "[t]here was a mutual exchange of consideration by which Plaintiff attended FIU involving payments and expenditure of time and FIU made its services available to Plaintiff including educational opportunities." (ECF No. 44 at 11). A fair reading of Plaintiff's Amended Complaint and his

---

[5] The Report and Recommendation further cautioned Plaintiff that "pleadings alleging any such contract shall be governed by the strict standards of Rule 11 requiring a good faith basis for any such allegations." (ECF No. 31 at 11) (citing Fed. R. Civ. P. 11).

response to the Motion indicates that Plaintiff is indeed suing pursuant to his contractual relationship with Defendant for educational services in exchange for tuition payment. However, this relationship sounds in "an implied contract and not an express, written contract." *Fla. Int'l Univ. Bd. of Trs. v. Alexandre*, 365 So. 3d 436, 440 (Fla. 3d DCA 2023) (quoting *Williams v. Fla. State Univ.*, No. 11cv350, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014)) (internal quotation marks omitted). Thus, the motion to dismiss is due to be granted insofar as Plaintiff has not alleged an express, written contract supporting a finding that Defendant waived its sovereign immunity. *See, e.g.*, *Alexandre*, 365 So. 3d at 442 (remanding breach of contract claim for dismissal where operative complaint failed to incorporate any document or writing containing an express promise).

Plaintiff's argument that Defendant is the "sole party in possession of the signed contract including enrollment, financial tuition payments and the policies and procedure in place at the time of signing," (ECF No. 44 at 11), does not excuse Plaintiff's obligation to allege a specific provision of the contract. *See Boca Raton Sailing v. Scottsdale Ins. Co.*, No. 18CV81236, 2019 WL 7904805, at *2 (S.D. Fla. Mar. 18, 2019) (reasoning that, "a complaint must at least provide enough information regarding the disputed terms to give the opposing party reasonable notice of which provisions are being contested," notwithstanding the court's wariness "of limiting access to justice for parties not in possession of the contracts to which they are bound.") Accordingly, Plaintiff's breach of contract claim should be dismissed with prejudice on the basis that Defendant is immune from such suit.

**D.      Plaintiff's Discrimination Claims Are Time-Barred.**

In addition to having failed to correct the deficiencies above, Plaintiff also did not address the Court's concerns regarding the statute of limitations. Defendant argues that both of Plaintiff's discrimination claims are barred by the statute of limitations. Defendant submits that Plaintiff's

Original Complaint, filed on October 20, 2023, was filed 16 months too late for his national origin discrimination claim, and 3 months too late for his sex-based discrimination claim.

Plaintiff responds that his complaint was timely filed because his claims did not accrue until he was hospitalized. One of the few revisions to Plaintiff's discrimination claims are the additional allegations that "[t]he mental and emotional harm caused to Plaintiff by Defendant did not accrue and was not known until Plaintiff's hospitalization on October 19, 2022." (ECF No. 39 at ¶¶ 62, 77). Plaintiff's response to Defendant's second Motion to Dismiss reiterates that, though "Plaintiff was notified of being trespassed [sic] from the University on October 16, 2019," the damage to Plaintiff "became known" on "October 22, 2019." (ECF No. 44 at 8). Plaintiff does not respond to Defendant's argument that, if the discrimination claims are calculated based on the dates on which the acts occurred, Plaintiff's claims would be time-barred.

As previously stated, "[t]he Eleventh Circuit has rejected the argument that a plaintiff must experience the full expression of his damages for a claim to accrue." (ECF No. 31 at 14) (citing *Karantsalis v. Cty of Miami Springs, Fla.*, 17 F.4th 1316, 1323 (11th Cir. 2021)). Plaintiff's allegation that "[t]he mental and emotional harm caused to Plaintiff by Defendants did not accrue and was not known until Plaintiff's hospitalization" (ECF No. 39 at ¶ 62) is unavailing. Plaintiff has identified no further basis for this Court to accept Plaintiff's conclusory allegation that his claims accrued upon the full realization of his emotional harm culminating in hospitalization, despite clear guidance that claims accrue based upon his learning of the discriminatory acts. *See* (ECF No. 31 at 12) (quoting *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998)).

Based on the rule that Plaintiff's claim accrued when he was informed of the discriminatory act, the Court previously analyzed the facts underlying each of Plaintiff's claims to determine

whether they were time-barred under Florida's four-year statute of limitations. *See* (ECF No. 31 at 12); Fla. Stat. § 95.11. The Court noted that, based on the allegations, Plaintiff's claim for national origin discrimination accrued in 2018. (*Id.*).

As to Plaintiff's sex-based discrimination claim, the Court previously stated that Plaintiff's Original Complaint was ambiguous as to whether he sought to bring separate discrimination claims (one based on the Nolan incident, and the other based on the Del-Canto incident) and whether Plaintiff's interview and subsequent banning by FIU police were discriminatory acts making up his sex-based discrimination claims. (*Id.* at 14). If Plaintiff were relying on his ban from campus, the Complaint did not provide the date on which FIU Police issued its permanent ban. *See* (*id.*). The Court reasoned that because Plaintiff was being granted leave to correct other deficiencies— such as shotgun pleading and failure to state claims on the merits—the Court recommended that Plaintiff be granted leave so as to resolve the matter on the merits. (*Id.* at 15). In adopting the undersigned's Report and Recommendations, the District reasoned that "[w]hile Defendant may ultimately be correct that both discrimination claims are time-barred, the Court notes that Plaintiff filed the Complaint *pro se* but is now represented by counsel. Thus, there is a greater chance that Plaintiff can clarify the events upon amending the Complaint." (ECF No. 33 at 5).

Defendant argues now that Plaintiff's national origin discrimination claim ought to be dismissed with prejudice because Plaintiff has failed to satisfy the Court's concerns that the claim accrued in 2018. (ECF No. 43 at 7). The Court agrees.  Plaintiff has alleged no new facts occurring after 2018 that would support a claim for national origin discrimination. Because Plaintiff did not file his Complaint until October 2023, his claim is time-barred.

Turning to Plaintiff's sex-based discrimination claim, Defendant argues that Plaintiff's claim began to accrue when Maguire was notified of Del-Canto's behavior on July 21, 2019; thus,

Plaintiff's sex-based discrimination claim became time-barred on July 21, 2023. (ECF No. 43 at 8). Finally, Defendant submits that its motion is functionally unopposed insofar as Plaintiff only argues that his claim accrued at the time of hospitalization and does not otherwise respond to Defendant's arguments.

Plaintiff's Amended Complaint alleges that Plaintiff reported Del-Canto's conduct to Maguire on July 19, 2019. (ECF No. 39 at ¶ 38). The Amended Complaint also adds that Nolan, like Maguire, failed to report Del-Canto's behavior (*Id.* at ¶ 71); Plaintiff contacted Nolan on September 28, 2019, and Nolan reported Plaintiff to FIU police on October 1, 2019. (*Id.* at ¶¶ 47, 48). The allegations relevant to the FIU Police ban contained elsewhere in the Amended Complaint are not incorporated in Plaintiff's claim for sex-based discrimination.[6] Plaintiff's response relies entirely on the date of his hospitalization for accrual of the statute of limitations and does not otherwise defend the timeliness of the complaint from any of these other potential triggering events. Thus, as predicted by the District Court, Plaintiff's Amended Complaint has indeed clarified the timeline of events. However, the clarified timeline demonstrates that Plaintiff's claim is time-barred regardless of whether the claim is based on the failures of either Maguire or Nolan. Thus, in addition to failing to state a claim, Plaintiff's sex-based discrimination claim should also be dismissed with prejudice as time-barred.

---

[6] Defendant also submits that Plaintiff's claim is time-barred even if the FIU Police Ban is included in Plaintiff's sex-based discrimination claim because the ban took place on October 17 and 19, 2019 according to an exhibit attached to the Motion. (ECF No. 43 at 9); (ECF No. 43-1). To that end, Defendant argues that the FIU Police Ban attached to its Motion should be considered as part of the Complaint by virtue of its mention in Plaintiff's Complaint. However, the Court need not address this point because, while Plaintiff's Original Complaint incorrectly incorporated every single allegation preceding each count—indeed, the Complaint was dismissed as a shotgun pleading on that basis— the Amended Complaint creates no such ambiguity. Instead, the sex-based discrimination claim incorporates *none* of the facts from the statement of facts.

**IV.     RECOMMENDATIONS**

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 43) be **GRANTED,** and that Plaintiff's Complaint be dismissed, with prejudice.   A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) days** of being served with a copy of this Report and Recommendations.   Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 1st day of July, 2025.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE